Filed 3/27/15  P. v. Sanders CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066139 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD251920) |
| SYLVIA SANDERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Sylvia Sanders of unlawful taking and

driving a vehicle (Veh. Code,[1] § 10851, subd. (a)).  Sanders appeals, contending the court committed prejudicial error by failing to instruct the jury on the lesser included offense of attempted unlawful taking and driving a vehicle.  As we explain, we reject this contention and affirm the judgment of conviction.

## FACTUAL BACKGROUND

In mid-October 2013, Sanders entered a rental car agency (agency) at approximately 5:00 a.m., approached an agency employee and stated she had a car reservation.  When the agency employee was unable to find Sanders's reservation, the employee asked Sanders for her driver's license.  In response, Sanders provided a California identification card.  Because Sanders had neither a valid driver's license nor a credit card, the employee declined to rent Sanders a car.

An agency employee testified that when a person rents a car, the customer is directed to a "stall" in the car lot to retrieve the rental, which is left unlocked with the keys in the ignition.  The customer must then exit the lot through an exit booth, where an agency employee scans a barcode on the car and confirms the customer rental information.  The employee also cross-references the customer's driver's license and rental contract to ensure the customer is renting the correct car.  Once confirmed, the employee pushes a button that operates a gate bar and tire spikes, allowing the customer to safely exit the lot.

An agency employee was working the exit booth when Sanders approached in an

---

[1]    All statutory references are to the Vehicle Code.

agency rental car. When the employee scanned the rental car's bar code, no information appeared. When asked by the employee, Sanders was unable to provide either a rental contract or a driver's license, and was also not a "Gold Customer," a category of customers who have their contract printed at the exit booth instead of in the lobby. Believing Sanders had left her license in the lobby, the employee called and spoke to the agency employee who confirmed she had declined to rent Sanders a car. The agency employee called the police. When officers arrived, they ordered Sanders out of the rental car and placed her under arrest.

## PROCEDURAL BACKGROUND

At the conclusion of trial, the defense requested a jury instruction on the lesser included offense of "attempted car theft." Because the rental car never left the agency parking lot, the defense argued a taking did not occur but rather only an attempt. The People responded by citing to CALCRIM No. 1820 (discussed *post*) and arguing that, because Sanders moved the car, a taking occured. The court agreed with the People, found the vehicle had been "moved a distance" but that the "issue in the case is more what was her intent[.]" As noted, the jury subsequently found Sanders guilty of an unlawful taking in violation of section 10851, subdivision (a). The court sentenced Sanders to 32 months in state prison.

## DISCUSSION

A court has the sua sponte duty to instruct the jury ""on the general principles of law relevant to the issues raised by the evidence. . . ." [Citation.] That obligation has

3

been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154; see *People v. Wickersham* (1982) 32 Cal.3d 307, 323 (*Wickersham*), disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 200-201.) Absent such evidence, no instruction on a lesser included offense need be given. (*People v. Flannel* (1979) 25 Cal.3d 668, 684; *Wickersham*, at pp. 324-325.)

Section 10851, subdivision (a) prohibits taking or driving a vehicle without its owner's consent with the intent to permanently or temporarily deprive the owner of the possession of the vehicle. A "taking" merely requires that "the vehicle be moved for any distance, no matter how small." (CALCRIM No. 1820.) Thus, a defendant can violate section 10851 simply by the act of driving the car without the owner's consent. (*People v. Frye* (1994) 28 Cal.App.4th 1080, 1086; *People v. Malamut* (1971) 16 Cal.App.3d 237, 241-242.)

Here, Sanders argues that because she never left the agency rental lot, she merely attempted an unlawful taking, as the agency never lost possession of the vehicle. However, the record shows that she moved the rental car when she drove it from the "stall" it was parked in to the exit booth. Because her doing so constitutes a completed taking and not an attempt, we conclude the court was correct in refusing to instruct on the lesser included offense of attempt. Moreover, the court was correct in finding that the

issue of whether there was an unlawful taking or driving hinged on Sanders's intent, which the record shows the jury resolved against Sanders.

Indeed, the fact that Sanders did not leave the agency parking lot is a red herring because the jury found that Sanders had the specific intent to deprive the agency of the possession and ownership of its vehicle. The record shows Sanders also did not rebut this finding or challenge the instruction given to the jury defining a "taking" (CALCRIM No. 1820). Finally, the record supports the finding that Sanders would have left the agency's lot if she had not been stopped at the exit booth by the gate bar and ground spikes. Because Sanders moved the vehicle without renting it and because she did so with the specific intent to deprive the owner of possession, the asportation was sufficient to constitute a taking. (*People v. White* (1945) 71 Cal.App.2d 524, 525.)

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

McDONALD, J.

IRION, J.

5