Filed 12/22/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOHN GERARD,<br><br>    Defendant and Respondent. | 2d Crim. No. B260679<br>(Super. Ct. No. 14PT-00441)<br>(San Luis Obispo County) |

The People appeal a judgment entered after the trial court granted John Gerard's motion for judgment. The court concluded Gerard could not be certified as a mentally disordered offender (MDO) because the Board of Parole Hearings (Board) did not obtain a timely MDO evaluation.[1] (Pen. Code, § 2962 et seq.) We conclude, among other things, that the Board properly placed a hold on Gerard's release from prison to allow time for an MDO evaluation. The Board's actions were consistent with its authority pursuant to section 2963 and did not require a written order to detain. We reverse.

*FACTS AND PROCEDURAL HISTORY*

In 2007, Gerard was convicted of committing lewd acts upon a child. (§ 288, subd. (a).) He was sentenced to a prison term and eventually released on parole. Thereafter, he committed multiple parole violations.

In 2013, Gerard was arrested for failing to register as a sex offender. (§ 290.) While his criminal case was pending, he was committed to Atascadero State Hospital to determine if he was competent to stand trial (§ 1367) and was there for 219 days. Gerard

---

[1] All statutory references are to the Penal Code.

was ultimately convicted of the offense and sentenced to a 16-month state prison term.  He had earned 584 days presentence credit, thus exceeding his 16-month sentence.

Gerard was received at the California Department of Corrections and Rehabilitation (CDCR) on March 10, 2014.  That was the same date that CDCR determined was Gerard's "earliest parole release date" (EPRD).  On March 10 and 11, CDCR and the Board detained Gerard to prevent his release from prison.  State correctional authorities "determined" Gerard met "the screening criteria to ascertain whether referral" for treatment as an MDO was appropriate.

On March 12, 2014, the Board filed its written order imposing a 45-day hold to keep Gerard in custody to conduct an MDO evaluation.  The order stated, "Good cause exists to issue the hold because the inmate was received into CDCR with less that 45 days to his EPRD."  (§ 2963.)  On April 17, the chief psychiatrist of the CDCR certified that Gerard was an MDO.  The Board then determined that Gerard met the requirements for commitment for treatment as an MDO.  (§ 2962 et seq.)

Gerard challenged the Board's determination (§ 2966, subd. (b)) and waived jury trial.  Before trial, he moved for judgment, asserting that the Board did not certify him timely as an MDO.

Gerard argued the Board may not detain him for an MDO evaluation because it did not file a written order before his March 10 release date.  The People argue there is no requirement in the Penal Code that the Board must "file a piece of paper" before the release date to exercise its authority pursuant to the MDO law.

The trial court granted Gerard's motion and entered judgment against the People.  It found that because the Board had not certified Gerard as an MDO "in a timely manner," he could not be committed for treatment.  The court said, "[The Board] can hold someone for an additional 45 days as was done in this case . . . .  But . . . the 45-day good cause extension must be ordered *and filed* by the [Board] *prior* to the parole date . . . ."  (Italics added.)  The People appeal.

## DISCUSSION

### *Prisoners May Be Committed for Treatment as MDO's*

The chief psychiatrist of CDCR must certify to the Board that the prisoner is an MDO before his or her "release on parole."  (§ 2962, subd. (d)(1).)  The Board is authorized to require "a further examination by two independent professionals" to determine whether the "prisoner has a severe mental disorder."  (*Id.*, subd. (d)(2).)

In 2010, the Legislature enacted section 2963.  It provides:

"(a) Upon a showing of good cause, the Board of Parole Hearings may order that a person remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to paragraph (1) of subdivision (d) of Section 2962 and any additional evaluations pursuant to paragraph (2) of subdivision (d) of Section 2962.

"(b) For purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the evaluations described in subdivision (d) of section 2962."

"In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law."  (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056.)  Courts should "'"select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."'"  (*Ibid.*)

Gerard entered CDCR on March 10, 2014.  His release date was also March 10, 2014.  The Board ordered that Gerard remain in custody for 45 days beyond his release date.  It found there was "[g]ood cause . . . to issue the hold because [Gerard] was received into CDRC with less than 45 days to his [release date]."  Within the 45-day period authorized by section 2963, the CDCR chief psychiatrist certified to the Board that Gerard was an MDO.  The Board's actions were timely pursuant to section 2963.

Citing *Blakely v. Superior Court* (2010) 182 Cal.App.4th 1445, Gerard claims the Board lost jurisdiction to issue the 45-day extension because its written order was filed

3

on March 12, two days after his release date. In *Blakely*, the People claimed there was good cause to hold the defendant for an MDO evaluation "past her parole release date due either to honest confusion over her custody credits or normal processing delays." (*Id*. at p. 1454.) The Court of Appeal held the MDO evaluation had to be performed prior to the release date because the Legislature had not enacted a good cause provision to extend MDO evaluations beyond the release dates. It ruled the Board's MDO evaluation was consequently untimely as it lost jurisdiction to act.

Here, the 2010 enactment to section 2963 provides the good cause provision that was not available to the Board in *Blakely*. The Legislature recognized there is often insufficient time to make an MDO evaluation before a scheduled release date. Section 2963 allows the Board to extend the custody period for good cause.

The trial court found that, because the Board did not *file* its *written* decision before Gerard's release date, it lost jurisdiction to act. But section 2963 has no such requirement. As the People note, the statute grants the Board the *power* to detain the inmate for a limited time to perform an MDO evaluation. This happened here. Because the Board has statutory authority to detain Gerard, its power to exercise that authority is not dependent on its filing a particular document. The trial court conflated the Board's power to detain under section 2963 with its record-keeping function to explain the reasons for its actions. The court erroneously concluded that a written order was a condition precedent to detention.

Gerard suggests an inmate may not be detained after his or her release date without a determination that he or she could qualify as an MDO. He contends CDCR calculated his "earliest parole release date (EPRD) to be March 10, 2014; [he] was not released on that date, *and no action was taken to certify [him] as an MDO until two days later, on March 12, 2014, when a hold was placed* on [him]." (Italics added.) But he was detained on March 10, and MDO screening occurred before the Board issued the March 12th written order. The Board stated: "The California Department of Corrections and Rehabilitation's (CDRC) Division of Adult Institutions (DAI) and/or the Division of Correctional Health Care Services (DCHCS) *have determined* the subject Gerard, John . . . *meets the screening criteria* to ascertain whether referral to the Department of State

4

Hospitals (DSH) *for treatment as a Mentally Disordered Offender* (MDO) pursuant to [Penal Code] section 2962 is appropriate."  (Italics added.)

Because the release date and the date Gerard entered CDCR were the same, the trial court's conclusion that a written order must be filed before the release date would deprive the Board of time to perform its duties and defeats the purpose of section 2963 to provide sufficient time to make an MDO evaluation.  The Board's action was reasonably delayed because of exigent circumstances pursuant to section 2963.

The trial court relied on *Blakely*, but section 2963 was the legislative rejection of the result reached in that decision.  The People note, "Offenders with serious mental disorders are likely to be hospitalized for mental competency proceedings, as Gerard was for 219 days.  Such offenders will tend to be received into CDCR custody with immediate or past-due release dates, just as Gerard was."  The Legislature's awareness of this problem is evident.  In past cases, MDO's who should have received treatment were released because of such timing issues.  That undermined the treatment goals of the MDO statute, presenting a threat to public safety.  Section 2963 corrected this problem by vesting the Board with jurisdiction to place holds on the release dates so that MDO's who need treatment would receive it.  We interpret the statute to accomplish this legislative goal.  (*People v. Lopez*, *supra*, 31 Cal.4th at p. 1056.)   The Board acted within its statutory authority.

The judgment is reversed.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

5

John A. Trice, Judge

Superior Court County of San Luis Obispo

_____

Kamala D. Harris, Attorney General, Jennifer A. Neill, Senior Assistant Attorney General, Julie A. Malone, Supervising Deputy Attorney General, Charles Chung, Deputy Attorney General, for Plaintiff and Appellant.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Respondent.